UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

ARROWOOD INDEMNITY COMPANY,
a Delaware corporation, f/k/a ROYAL
INDEMNITY COMPANY,

        Plaintiff,

v.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a Connecticut
corporation, f/k/a THE TRAVELERS
INDEMNITY COMPANY OF ILLINOIS,

        Defendant.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

ARROWOOD INDEMNITY COMPANY, a Delaware corporation, f/k/a ROYAL INDEMNITY COMPANY ("ARROWOOD"), by and through its undersigned counsel, brings this Complaint against TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation, f/k/a THE TRAVELERS INDEMNITY COMPANY OF ILLINOIS ("TRAVELERS"), and in support thereof states as follows:

1. This is an action for Declaratory Relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C.S. § 1332 because the parties are in complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest, attorney's fees and costs.

3. Venue is proper pursuant to 28 U.S.C.S. § 1391(a)(2) because a substantial part of the events giving rise to this dispute occurred within this District and the underlying action described below was filed in Miami-Dade County, Florida.

## PARTIES

4. ARROWOOD is, and was at all times relevant hereto, a foreign corporation organized in Delaware with its principal place of business in North Carolina. Upon information and belief, ARROWOOD delivered an insurance policy that is the subject of this lawsuit to Metropolitan Life Insurance Company. (hereinafter "METLIFE" or "the insured") in the State of New York. ARROWOOD is authorized to transact business in the State of Florida.

5. TRAVELERS is, and was at all times relevant hereto, a Connecticut corporation with its principal place of business in Connecticut. Upon information and belief, TRAVELERS delivered an insurance policy that is the subject of this lawsuit to METLIFE in the State of New York. TRAVELERS is authorized to transact business in the State of Florida.

## FACTUAL BACKGROUND

### The Primary Policy

6. TRAVELERS issued a Commercial General Liability Policy to METLIFE numbered TC2J-GLSA-107T5973-TIL-97, for the 01/01/97-01/01/98 policy period (hereinafter referred to as the ("Primary Policy"). (A copy of the Primary Policy in Plaintiff's possession is attached hereto as Exhibit "A").

7. The Insuring Agreement to the Primary Policy provides, in pertinent part:

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have not duty to defend the insured against any "suit" seeking damages for … "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ….

(See Exhibit "A").

8.  The Primary Policy provides commercial general liability coverage to METLIFE with a $1,000,000.00 per occurrence limit of liability. (See Exhibit "A").

9.  The Primary Policy also provides certain additional benefits under Section A. – Supplementary Payments, including Costs taxed against the insured, Prejudgment Interest, and Post-Judgment Interest. (See Exhibit "A").

10. The Primary Policy's Supplementary Payments provision provides, in pertinent part:

> SUPPLEMENTARY PAYMENTS – COVERAGES A AND B
>
> We will pay with respect to any claim or "suit" we defend:
>
> . . .
>
> 5. All costs taxed against the insured in the "suit."
>
> 6. <u>Prejudgment interest awarded against the insured on that part of any judgment we pay.</u> If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> 7. All interest on the full amount of any judgment that accrues after the entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance. (See Exhibit "A").

3

11. Thus, pursuant to paragraph 6 of the Primary Policy's Supplementary Payments provision, the Primary Policy provides coverage for prejudgment interest on the part of <u>any</u> judgment paid by TRAVELERS.

12. The Primary Policy contains a Deductible Liability Insurance Endorsement which provides, in pertinent part:

DEDUCTIBLE LIABILITY INSURANCE

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

...

LIMITS OF INSURANCE

DEDUCTIBLE – ALLOCATED LOSS ADJUSTMENT EXPENSE

SECTION III – LIMITS OF INSURANCE is amended to include the following provisions:

1. Our obligation to pay damages and Allocated Loss Adjustment Expense under this policy on behalf of the insured, applies only to the amount of damages and Allocated Loss Adjustment Expenses which are in excess of the deductible amounts if any stated in the schedule below.

2. The deductible amounts apply to all damages and allocated loss adjustment expenses incurred as the result of any one occurrence, or offense, or act, error or omission (as applicable).

...

5. Allocated Loss Adjustment Expenses encompass the following costs which can be directly allocated to a particular claim.

   A. Fees of attorneys or authorized representatives where permitted for legal services, whether by outside or staff representatives.

   B. Court, alternate dispute resolution and other specific items of expense such as:

- Medical examinations of a claimant to determine the extent of the carrier's liability, degree of permanency, or length of disability;
- Expert medical or other testimony;
- Autopsy;
- Witnesses and summonses;
- Copies of documents such as birth and death certificates, medical treatment records;
- Arbitration fees;
- Surveillance;
- Appeal bond costs and appeal filing fees.

C. Medical cost containment expenses incurred with respect to a particular claim . . . .

...

D. Expenses not defined as losses and are <u>directly related to and directly allocated to the handling of a particular claim</u> which are required to be performed by statute or regulation.

The following shall not be included as allocated loss adjustment expense:

(1) Salaries, overhead and traveling expenses of our employees, except for employees while doing activities previously listed as allocated expenses.
(2) Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a claim so that a determination can be made of the cause, extent or responsibility for the injury or disease, including evaluation and settlement of covered claims.
(3) Expenses which are defined as either an indemnity or medical loss.

(See Exhibit "A").

**The Excess Policy**

13. ARROWOOD issued a Big Shield Commercial Catastrophe Liability Policy to METLIFE, numbered PHN 010983 for the 01/01/97 – 01/01/99 policy period (hereinafter referred to as the ("Excess Policy"). (A copy of the Excess Policy is attached hereto as Exhibit "B").

5

14. The Insuring Agreement to the Excess Policy provides in pertinent part:

I. INSURING AGREEMENT

1. We will pay on behalf of the Insured those sums in excess of the "Retained Limit" which the Insured becomes legally obligated to pay as damages to which this insurance applies because of:

    (a) "Bodily Injury" or "Property Damage" which occurs during the policy period and is caused by an "Occurrence"

    . . .

2. We will have the right and duty to defend any "Suit" seeking those damages when:

    (a) the applicable limits of insurance of the "Underlying Insurance" and other insurance have been used up in the payment of judgments or settlements; or

    . . .

    We will pay, with respect to any claim or "Suit" we defend:

    . . .

    (vi) Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

    . . .

    These payments will not reduce the limits of insurance.

(See Exhibit "B").

15. The term "Retained Limit" is defined in the Excess Policy to mean:

    (a) with respect to any "Occurrence" that is covered by "Underlying Insurance" or any other insurance, the total of the applicable limits of the "Underlying Insurance" shown on the Declarations page plus the applicable limits of any other insurance collectible by the Insured; or

    (b)    with respect to any "Occurrence" that is not covered by "Underlying Insurance" or any other insurance, the amount stated in Item 4 of the Declarations as the Retained Limit/Each Occurrence.

(See Exhibit "B").

16.    The term "Underlying Insurance" is defined in the Excess Policy to mean:

> The policies or self insurance listed in the Schedule of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. Policies purchased or issued as replacements for policies or self insurance listed in the Schedule of Underlying Insurance or for newly acquired or formed organizations shall not be more restrictive than those listed in the Schedule of Underlying Insurance. All "Underlying Insurance" shall be maintained by you in accordance with Condition 15 of this policy.

(See Exhibit "B").

17.    The Excess Policy contains a condition entitled "Maintenance of 'Underlying Insurance'" which provides, in pertinent part:

> 15. Maintenance of "Underlying Insurance"
>
> . . .
>
> For purpose of this policy:
>
> (a) if any "Underlying Insurance" is not available or collectible because of:
>
> . . .
>
>     (ii)    the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy;
>
> . . .
>
> then this policy shall apply (and amounts payable hereunder shall be determined) as if such "Underlying Insurance" or "Retained Limit" were available and collectible.

(See Exhibit "B").

**Underlying Action**

7

18. On or about May 18, 1997, Maurice Jewelers, Inc. ("MAURICE") suffered a burglary to its jewelry store located in a strip mall at 13615 South Dixie Highway, #113, Miami, Florida ("the subject property").

19. METLIFE was the landlord and property owner of the subject strip mall on the date of the burglary.

20. On May 16, 2001, MAURICE filed a complaint against METLIFE and others in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, styled *Maurice Jewelers, Inc. v. Wexler Insurance Agency, Inc., et al.*, Case No. 01-11703 CA 21 (the "underlying action complaint").

21. In the underlying action complaint, MAURICE alleges various acts of negligence against METLIFE arising out of METLIFE's purported obligations as landlord and property owner.

22. On July 25, 2001, the Plaintiff advised METLIFE that it had received notice of the underlying action complaint and sought confirmation that it was not being asked to participate in the defense and/or indemnification of METLIFE at that time. (A copy of the 7/25/01 letter is attached hereto as Exhibit "C").

23. On May 4, 2010, the jury returned a verdict apportioning 25% liability for the damages claimed by MAURICE to METLIFE ("Jury Verdict"). (A copy of the Jury Verdict is attached hereto as Exhibit "D").

24. The Jury Verdict totaled $2,931,820.00. (See Exhibit "D").

25. On November 18, 2010, the Court in the underlying action entered a corrected final judgment against METLIFE in the amount of $1,985,796.04 (hereinafter referred to as the "final judgment"). (See Exhibit "E").

26. $754,531.50 of the final judgment represents the damages awarded against METLIFE for its direct negligence (hereinafter referred to as the "direct-damage portion of the final judgment").

27. $150,906.30 of the final judgment represents the damages awarded against METLIFE for its vicarious liability (which is joint and several with F.C.S. Service, Inc.) (hereinafter referred to as the "vicarious-damage portion of the final judgment").

28. $900,298.26 of the final judgment represents the amount of pre-judgment interest on the direct-damage portion of the final judgment (hereinafter referred to as the "direct pre-judgment interest portion of the final judgment").

29. $180,059.64 of the final judgment represents the amount of pre-judgment interest on the vicarious-damage portion of the final judgment (hereinafter referred to as the "vicarious pre-judgment interest portion of the final judgment")(the direct pre-judgment interest portion of the final judgment and the vicarious pre-judgment interest portion of the final judgment are hereinafter collectively referred to as the "pre-judgment interest portion of the final judgment").

30. The direct-damage portion of the final judgment ($754,531.50) plus the vicarious-damage portion of the final judgment ($150,906.30) in the underlying action is within the Primary Policy's $1,000,000.00 Limit of Insurance.

31. Thus, both the direct-damage portion of the final judgment and the vicarious-damage portion of the final judgment in the underlying action is covered under the Insuring Agreement to the Primary Policy.

32. Pursuant to the plain language of the Primary Policy, TRAVELERS was obligated to pay MAURICE both the direct-damage portion of the final judgment and the vicarious-damage portion of the final judgment.

33. Pursuant to the Primary Policy's Supplementary Payments provision, the Primary Policy provides coverage for prejudgment interest on the part of any judgment paid by TRAVELERS.

34. Since the prejudgment interest portion of the final judgment in the underlying action is based upon a direct- and vicarious-damage award that is within the Primary Policy's limits, it is covered under the Primary Policy pursuant to the Primary Policy's Supplementary Payments provision.

35. Thus, pursuant to the Primary Policy's Supplemental Payments provision, TRAVELERS is obligated to pay MAURICE the entire prejudgment interest portion of the final judgment.

36. Upon information and belief, TRAVELERS provided METLIFE with its position statement on January 11, 2011 to clarify its position as to how "the various elements of damages from the Jury Verdict/final judgment would apply." (A copy of the 1/11/11 letter with an incorrect date of 1/11/10 is attached hereto as Exhibit "F").

37. TRAVELERS' position statement incorrectly refers to the prejudgment interest portion of the final judgment as "damages." (See Exhibit "F").

38. In an E-mail dated January 10, 2011, TRAVELERS notified ARROWOOD that it had "re-examined the pre-judgment interest element of damages covered under the Supplementary Payments portion of the Policy" and that it "may have misrepresented to [ARROWOOD] in the past that this element of damages was outside the Policy limits ... ." (A copy of the 1/10/11 e-mail is attached hereto as Exhibit "G").

39. In a letter dated January 21, 2011, ARROWOOD requested that TRAVELERS protect the interests of METLIFE, their mutual insured, and agree to pay MAURICE all amounts

10

due under the Primary Policy, including the pre-judgment interest portion of the final judgment. (A copy of the 1/21/11 letter is attached hereto as Exhibit "H").

40. In an E-mail dated January 31, 2011, TRAVELERS expressed its position that the Primary Policy has been exhausted with the conveyance of a $1,000,000.00 offer to MAURICE. (A copy of the 1/31/11 letter is attached hereto as Exhibit "I").

41. Because of TRAVELERS failure to pay MAURICE the amounts owed to it under the Primary Policy and failure to protect the interests of its insured, ARROWOOD was forced to contribute towards a settlement with MAURICE, the terms of which are confidential. (See 2/1/11 letter from ARROWOOD to TRAVLERS attached hereto as Exhibit "J").

42. TRAVELERS contends that the prejudgment interest portion of the final judgment is not covered under the Primary Policy because it purportedly falls within the Primary Policy's Deductible Liability Insurance Endorsement.

43. ARROWOOD contends that the prejudgment interest portion of the final judgment is covered under the Primary Policy pursuant to the Primary Policy's Supplementary Payments provision.

### COUNT I – DECLARATORY RELIEF

44. ARROWOOD re-alleges the allegations set forth in paragraphs 1 through 43 as if though fully set forth herein.

45. This is an action for declaratory relief brought pursuant to 28 U.S.C. § 2201.

46. ARROWOOD has complied with all conditions precedent to the filing of this lawsuit.

47. An actual controversy exists between ARROWOOD and TRAVELERS as to whether the prejudgment interest portion of the final judgment is covered under the Primary Policy.

48. It is ARROWOOD's position and belief that the prejudgment interest portion of the final judgment falls within the Primary Policy's Supplementary Payments provision and not within the Primary Policy's Deductible Liability Insurance Endorsement.

49. It is TRAVELERS' position that the prejudgment interest portion of the final judgment is not covered under the Primary Policy pursuant to the Primary Policy's Deductible Liability Insurance Endorsement.

50. The parties require an immediate resolution of their dispute regarding whether the prejudgment interest portion of the final judgment falls within the Primary Policy's Supplementary Payments provision and not within the Primary Policy's Deductible Liability Insurance Endorsement.

51. The parties require an immediate resolution of their dispute regarding whether the prejudgment interest portion of the final judgment is covered under the Primary Policy.

**WHEREFORE**, Plaintiff, ARROWOOD, respectfully requests that this Honorable Court issue its Order and judgment declaring that:

a. This Court has jurisdiction over the parties in this matter;

b. That the $1,080,357.9 in prejudgment interest awarded to MAURICE and against METLIFE in the underlying action is covered under the Primary Policy's Supplementary Payments provision;

c.  That the $1,080,357.9 in prejudgment interest awarded to MAURICE and against METLIFE in the underlying action does not fall within the Primary Policy's Deductible Liability Insurance Endorsement;

d.  That the $1,080,357.9 prejudgment interest awarded to MAURICE and against METLIFE in the underlying action does not constitute an Allocated Loss Adjustment Expense as defined in the Primary Policy's Deductible Liability Insurance Endorsement;

e.  That TRAVELERS, not ARROWOOD, is responsible for any amounts paid to MAURICE for prejudgment interest awarded to MAURICE and against METLIFE in the underlying action; and

f.  That TRAVELERS must reimburse ARROWOOD for any amounts paid by ARROWOOD to MAURICE for damages and/or prejudgment interest awarded to MAURICE and against METLIFE in the underlying action.

## DEMAND FOR TRIAL BY JURY

ARROWOOD demands a trial by Jury on all issues so triable as a matter of law.

Dated: May 10, 2011

Respectfully submitted,

/s/ John Bond Atkinson
JOHN BOND ATKINSON
Florida Bar No. 0290270
jatkinson@atkinsonbrownell.com
ELLIE A. BERNSTEIN
Florida Bar No. 0652806
ebernstein@atkinsonbrownell.com
ATKINSON & BROWNELL, P.A.
One Biscayne Tower, Suite 3750
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 305-376-8840
Fax. 305-376-8841
*Attorneys for Plaintiff*